M. T. PATTEN v. THE DES MOINES REGISTER AND LEADER Co., a Corporation.

**Slander and libel:** PLEADINGS: *Innuendo.* Where an alleged libelous publication does not on its face refer to the plaintiff by name and he is not in direct terms made the subject of any part of the publication, but the same contains language which might have been intended to refer to plaintiff and so understood by the reading public, the plaintiff must in his petition plead by proper *innuendo* that such indirect terms were intended to apply to him and to be so understood by third parties.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

THURSDAY, JUNE 8, 1911.

ACTION for damages for libel. At the close of plain-

tiff's evidence there was a directed verdict for the defendant. Plaintiff appeals. *Affirmed.*

*L. A. Smyres,* for appellant.

*Guernsey, Parker & Miller,* for appellee.

EVANS, J.—The defendant is a corporation engaged in publishing a daily newspaper of general circulation. On March 19, 1909, defendant published the following:

Indicted padrone run to earth here. Federal officers capture Greek here wanted in Chicago. Dragged from under bed. George Manolis, with his father and cousin, are accused of violating the immigration laws. Guarded and secreted two weeks by scores of Greeks, is chochetted back and forth from the eastern to the western boundary of Des Moines, and in time of need railroaded to nearby towns. George Manolis, padrone, a much wanted man, was tracked to earth last night at 11:30 o'clock by Special Immigration Inspector A. A. Seraphic, of New Orleans, and Deputy United States Marshal George E. Bidwell. Manolis is under indictment by the Chicago federal grand jury on counts of conspiracy, the victimization of emigrants and violation of the alien contract labor laws. It was at Patten's boarding-house, Fourteenth and High streets, that the fleeing Greek was brought to bay. After an unceasing search of the city, that commenced at 3:00 o'clock yesterday afternoon, he was lodged behind the bars of the Polk county jail shortly after 12 o'clock, and the officials took the first long breath that they have drawn for several days. Six Greeks had to be thrown into jail early last night and sweated through the very last degree before they would divulge the movements of Manolis. The first Greek who peached told that he was stopping at the boarding-house at Fifth and Chestnut. The officers went to that place, but George had flown the coop.

Another Given Degree. They took another young Greek into custody, and it was the third degree for him also. He promised to lead the way to where the hunted man was at the time, and directed his steps to Fourteenth

and High streets. The people in the house firmly denied that there was any such person there, but their word was not believed. Every room was searched, and in a back stairway bedroom on the second floor Manolis was discovered, curled up like a dog as far under the bed as he could get. He yelled like a madman when Marshal Bidwell grabbed him by the leg. Out in the light he began to cringe and cower, lost his braggadocia that has made him so popular with the Greeks in Des Moines during his short but busy residence, and cried for mercy.

The plaintiff complains of such publication as libelous. He avers that he and his family were the proprietors of "Patten's boarding-house," which was referred to in such article. This is the substance of the allegation upon which he bases the claim that such article was libelous as to him. The publication does not on its face refer to the plaintiff by name. He is not in direct terms made the subject of any part of the publication. There are certain indirect terms used, such as the name of the boarding-house and the "people in the house," which might have been intended to refer to the plaintiff, and which might have been so understood by the reading public. Such seems to be the claim of appellant in argument. But in such case it was incumbent upon him to plead by proper *innunendo* that such indirect terms were intended to apply to the plaintiff and were so understood by third parties. The absence of allegation in this respect is emphasized by the absence of evidence along the same line. The manifest emphasis of the publication is upon the conduct of Manolis and that of his Greek friends who tried to conceal him. It is not claimed by plaintiff that he was included in this category. He was simply keeper of a boarding-house. He had twelve or fifteen boarders therein. The expression "the people in the house" was fairly applicable to such boarders. Whether these included the Greek friends of Manolis does not appear. That Manolis was in concealment at his house when arrested is conceded by

the plaintiff, although plaintiff himself made no effort to conceal him. None of the boarders appeared as witnesses. The plaintiff testified that he never denied the presence of Manolis. A servant in the house testified likewise. Upon this testimony the plaintiff rested his case.

No evidence was offered as tending to show any intent in the publication of the article to assail the personal reputation of the plaintiff except as such intent might be inferred from the article alone. As already indicated, the publication by its terms does not purport to be aimed at the plaintiff.

In the state of the record, the trial court properly directed the verdict, and its order is *affirmed*.